681 So.2d 773 (1996)
UNITED FARM WORKERS OF AMERICA, AFL-CIO, Appellant,
v.
QUINCY CORPORATION, d/b/a Quincy Farms, a Florida corporation, Appellee.
No. 96-1210.
District Court of Appeal of Florida, First District.
September 20, 1996.
*774 Robert A. Williams, Florida Legal Services, Inc., Tallahassee; Sarah H. Cleveland, Florida Legal Services, Inc., Belle Glade; James K. Green, ACLU of Florida, Inc., West Palm Beach, for Appellant.
David J. Stefany of Hogg, Allen, Norton & Blue, P.A., Tampa; James Harold Thompson and Timothy B. Elliott of Macfarlane Ausley Ferguson & McMullen, Tallahassee, for Appellee.
PER CURIAM.
United Farm Workers of America, AFL-CIO (the UFW), seeks reversal of a temporary ex parte injunction prohibiting it and its agents from taking certain actions in support of union organizing efforts on the property of appellee, Quincy Corporation, doing business as Quincy Farms. Appellant argues that the temporary injunction was not issued in conformity with the requirements of Rule 1.610, Florida Rules of Civil Procedure, and that it is violative of constitutional principles regarding free speech. For the reasons set forth below, we are constrained to quash the instant temporary injunction because of substantial failures to comply with the unequivocal requirements of Rule 1.610 in the entry of the injunction.

Factual and Procedural Background
Quincy Farms owns and operates a mushroom farm in Quincy, Florida. In late 1995, some workers at the mushroom farm began efforts to organize a union. On March 15, 1996, Quincy Farms filed a complaint for a temporary and preliminary injunction. The complaint alleged that the unionizing efforts eventually took the form of "blocking and obstructing traffic and ingress and egress" to and from the farm and "[e]xpressly, and by implication, threatening members of the public and those seeking to enter or leave Quincy Farms with death and serious bodily harm" as well as threatening farm employees "with serious bodily harm, violence and violence to their homes, families and property...." Other violent and unlawful behavior was alleged.
Attached to the complaint were the affidavits of Robert Hilston, the Traffic Safety *775 Manager for Quincy Farms, and Richard Lazzarini, Jr., President and Chief Operating Officer of Quincy Corporation, d/b/a, Quincy Farms. Hilston's affidavit states that on March 14, 1996, 75 to 100 persons affiliated with the UFW were picketing across the road from the main entrance of the farm, when they began blocking the entrance to the farm and the access to the truck weighing scales. Hilston's affidavit further states that on March 15, 75 to 100 demonstrators were again on the roadway leading to the farm and impeded the progress of vehicles seeking entrance to Quincy Farms. Further, at approximately 6:30 a.m. on March 15, Hilston claimed that a driver of a vehicle was forced to swerve to avoid hitting the union demonstrators and struck another vehicle causing personal injuries. There is nothing in Hilston's affidavit regarding any threats of injury to person or property, as is alleged in the complaint, and there are no allegations in the complaint regarding the automobile accident on the morning of March 15.
Lazzarini's affidavit recounts unionizing efforts at the farm commencing in October 1995, and Quincy Farms' responses to those efforts. Lazzarini described the events of March 14, 1996, when workers, who had been demonstrating during the lunch break, refused to return to work and were later arrested for trespass upon their refusal to leave the Quincy Farms' property. Lazzarini also states that on March 14 certain employees blocked egress and ingress of traffic through the main gate to the farm for approximately 45 minutes. Lazzarini added that demonstrators continued "to crowd vehicles entering and departing the premises, including having caused a serious traffic accident...." Lazzarini further added that non-striking union employees reported receiving harassing telephone calls. There is, however, no affidavit in the record by a recipient of such a call. Attached to Lazzarini's affidavit as exhibits are two letters from the Greensboro (a community neighboring Quincy) office of the UFW. The letterhead of this correspondence contains a local post office box as well as a local telephone number for the UFW.
On the afternoon of March 15, 1996, a hearing on the complaint for an injunction was heard. No attorney or representative appeared at the hearing on behalf of the UFW. Submitted in conjunction with the complaint was a nine-page memorandum of law reviewing the state and federal case law regarding the enjoining of labor demonstrators.
A temporary injunction against the UFW was issued on March 15 which, among other things, provided that the UFW and its agents and representatives were prohibited from
[c]ongregating, parking cars, or physically standing within fifty (50) yards of the entrances to Quincy Farms ... provided, however, that [appellant] may not have more than 8 picket[er]s on either side at any entrance to the premises performing picketing at any one time.
There are no specific findings of fact contained in the injunction. It provides simply, in pertinent part, as follows:
The Court being fully advised in the premises, and after hearing arguments for counsel for all parties, and it appearing that the injuries apprehended will be done if an immediate remedy is not afforded....
Although the injunction states that "counsel for all parties" made argument before the lower court, appellee concedes that this injunction was issued ex parte without the presence of appellant or its counsel. Further, the injunction does not include any findings as to what specific irreparable injuries the lower court "apprehended" were imminent without issuance of this injunction. Finally, the trial court did not indicate in the injunction whether notice was provided to the appellant; why the order was granted without notice, if notice was not given; and why the bond requirement of Rule 1.610, Florida Rules of Civil Procedure, was waived.

Scope of Review
As a threshold issue, appellee suggests, on the authority of County of Orange v. Webster, 503 So.2d 988 (Fla. 5th DCA 1987), that our review in this case is limited to a review of the legal sufficiency of the *776 complaint and the supporting affidavits which form the basis of the injunction. We agree with appellee that the standard of review in a direct appeal of a temporary injunction, where the enjoined party elects not to seek dissolution of the injunction under Rule 1.610(d), does not permit an inquiry into the factual matters presented in the underlying case. See, Hotel-Motel Restaurant Employees & Bartenders Union v. Black Angus of Lauderhill, Inc., 290 So.2d 479 (Fla.1974). However, the lower court's compliance with the requirements of law when issuing an injunction is a matter within the purview of a reviewing court. See, City of Jacksonville v. Naegele Outdoor Advertising Co., 634 So.2d 750 (Fla. 1st DCA 1994), approved, Naegele Outdoor Advertising Co., Inc. v. City of Jacksonville, 659 So.2d 1046 (Fla.1995). Here, our conclusion that the issuance of the temporary injunction failed to comply with the requirements of Rule 1.610 involved inquiry solely into the legal sufficiency of the order on appeal, the complaint and the supporting documents.

Temporary Injunction Without Notice
As the Florida Supreme Court has instructed, "[a] temporary injunction without notice is an extraordinary remedy and should be granted sparingly." State v. Beeler, 530 So.2d 932, 933 (Fla.1988). This judicial restraint is especially applicable where the injunction would restrain the exercise of First Amendment rights.
There is a place in our jurisprudence, for ex parte issuance, without notice, of temporary restraining orders of short duration; but there is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate.
Carroll v. President & Commissioners of Princess Anne, 393 U.S. 175, 180, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968).
Because a temporary injunction, by its nature, is frequently sought and issued under hurried circumstances, Rule 1.610(b), Florida Rules of Civil Procedure, provides certain due process requirements which must be followed by the party seeking a temporary injunction without notice and by the trial court issuing such an injunction. These requirements seek to assure that "a court ... never issue[s] an ex parte order without notice to defendants and without a hearing, unless an immediate threat of irreparable harm exists, which forecloses opportunity to give reasonable notice...." Lieberman v. Marshall, 236 So.2d 120, 125 (Fla.1970).
Rule 1.610(a), Florida Rules of Civil Procedure, provides:
(1) A temporary injunction may be granted without written or oral notice to the adverse party only if:
(A) it appears from the specific facts shown by affidavit or verified pleading that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
(B) the movant's attorney certifies in writing any efforts that have been made to give notice; and
(C) the reasons why notice should not be required.
The UFW asserts that notice was not given. Indeed, there is nothing before us which indicates that notice was given. Except for the erroneous reference to "counsel for all parties" making argument, the injunction itself does not address the issue of notice. Quincy Farms claims in its answer brief that at 3:45 p.m. on March 15 it attempted to give the so-called "picket line captain" a copy of the complaint and supporting documents. In support of this factual allegation, Quincy Farms has appended to its brief a photocopy of the court clerk's handwritten notes from the trial court below, which purport to reflect that counsel for Quincy Farms advised that an attempt at notice was made. Of course, the clerk's notes are not statements made under oath. Furthermore, even if we were to conclude that the record did sufficiently reflect that notice was attempted, such an attempt, by itself, is without consequence. Rule 1.610(a)(1)(B) expressly provides that, when notice is not given, the movant's attorney must certify in writing the efforts that were *777 made to give notice. See, Doss v. Doss, So.2d 1170, 1171 (Fla. 2d DCA 1994). Counsel for the Quincy Farms has properly conceded before this court that no such written certification was filed below.
Quincy Farms has not presented this court with any authority holding that the requirement of written certification regarding the efforts to provide notice may be waived. Quincy Farms' suggestions that it did not have sufficient time to provide notice and did not know the location of the local UFW office miss the point of the express requirement in Rule 1.610(a) for an attorney's certificate. In addition, these explanations for failing to provide notice are belied by the record. First, Quincy Farms possessed, and attached to the Lazzarini deposition, a UFW letter with the telephone number and address of the local UFW office. Second, if the attorneys for Quincy Farms had sufficient time to prepare a complaint and memorandum of law which detailed the facts of the day before and had time to obtain the affidavits of Hilston and Lazzarini which refer to the events on the day of the hearing, surely there was time to provide notice to appellant.
Further, Rule 1.610(a)(2) requires that "[e]very temporary injunction granted without notice ... shall define the injury, state findings by the court why the injury may be irreparable, and give the reasons why the order was granted without notice if notice was not given." The instant temporary injunction contains none of these required findings and express reasons.
Because the instant temporary injunction was not issued in compliance with the express requirements of Rule 1.610(a), the injunction must be quashed. See, Shouman v. American Express Travel Related Services Co., 566 So.2d 875 (Fla. 3d DCA 1990); Soffer v. Leopold, 531 So.2d 201 (Fla. 3d DCA 1988).

Bond Requirement
As suggested above, the lower court did not order appellee to post a bond. In addition, no explanation or findings were offered by the lower court as to why a bond was not required. Rule 1.610(b) provides that "[n]o temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems proper...." Rule 1.610(b) provides only two exceptions to this bond requirement, neither of which is applicable in the instant case. First, a municipality or the state, or a officer, agency or political subdivision thereof may be exempted from the bond requirement. Obviously, appellee is not such an entity. Second, "[no] bond shall be required for issuance of a temporary injunction issued solely to prevent physical injury or abuse of a natural person." Rule 1.610(b), Fla. R. Civ. P. (emphasis added). See, Neal v. Neal, 636 So.2d 810 (Fla. 1st DCA 1994).
Appellee argues that in the instant case physical injury was sustained as a result of the picketing. The lower court, however, did not find that the injunction was premised solely on the prevention of physical injury. Further, the temporary injunction is not drawn in a manner solely to prevent alleged possible physical injury. The complaint alleges that the actions of the appellants are aimed "at injuring or destroying the Plaintiff's business and interfering with and impairing the Plaintiff's business relationship ....," and the restrictions on picketing contained in the temporary injunction are designed, at least in substantial part, to prevent this economic harm to Quincy Farms, not solely to prevent physical injury to natural persons. Accordingly, since the temporary injunction prohibits actions broader than required "solely to prevent physical injury," the complete waiver of a bond was error. Should another temporary injunction be issued on remand, a bond must be required to the extent the injunction restrains acts other than those acts required to prevent physical injury to a natural person.
Because of our holdings here, we decline to rule upon the constitutional issues raised by appellants. Those issues should first be addressed by the trial court at the time any further injunctive relief is requested in the instant action. See, Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941); Carroll v. President & Commissioners of Princess Anne, supra; Madsen v. Women's *778 Health Center, 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994).
The temporary injunction issued in the instant case is QUASHED.
BOOTH, JOANOS and VAN NORTWICK, JJ., concur.